Sentence affirmed.

## HIMELY v. ROSE.

THIS was an appeal from so much of the final sentence of the circuit court for the district of South Carolina, rendered upon the mandate from this court issued upon the reversal of the former sentence of that court, (*see ante, vol.* 4. *p.* 292.) as affirmed the report of auditors appointed by the court " to inquire and report *whether any*, and if any, what deductions are to be allowed for freight, insurance and other expenses which would have been incurred by the owners in bringing the cargo into the United States, and also to ascertain and report *the interest* to be paid by the claimant to the appellant," so far as that report allowed *interest* to the appellant, and disallowed the expense of insurance to the claimant.

*It is not necessary to take exceptions to the report of auditors, if the errors appear upon the face of the report. If the property, ordered to be restored, be sold, interest is not to be paid.*

This court, in reversing the former sentence of the circuit court, decreed as follows : that the Sarah and her cargo " ought to be restored to the original owners, subject to those charges of *freight, insurance* and other expenses which would have been incurred by the owners in bringing the cargo into the United States; which equitable deductions the defendants are at liberty to show in the circuit court. This court is therefore of opinion, that the sentence of the circuit court of South Carolina ought to be reversed, and the cause be remanded to that court in order that a final decree may be made therein conformably to this opinion."

HIMELY
v.
ROSE.

Upon receiving the mandate from this court to carry its sentence of reversal into effect, the circuit court directed a reference to auditors in the terms above stated; and the auditors reported "that the claimant is not entitled to any insurance, but that he ought to be allowed freight on the cargo at the rate of one cent per pound for such of it as was in bags, and one and a half cent per pound for such of it as was in casks, and also the sum of 500 dollars for expenses incidental to the landing, wharfage, storage, &c. of the cargo, which sums being deducted from the amount of the decree, the claimant must pay the appellant two years' interest on the residue at the rate of seven *per cent. per annum.*"

*Martin* and *Jones*, for *Himely*, the appellant.

After the express mandate of this court, directing the allowance of freight and insurance, the court below ought not to have referred it to auditors to say whether *any thing* should be allowed for insurance.

The mandate was silent as to interest; indeed, as the proceeding was *in rem*, and the decree for *restitution*, interest could not have been given.

LIVINGSTON, J. Can this court take notice of these errors in the report, if no exception were taken in the court below?

*Martin.* There were no particular items to which an exception was necessary. The error appears palpably upon the face of the proceedings. And this court, in the case of *Murray* v. *The Charming Betsy.* (*ante, vol.* 2. *p.* 124.) decided, that exceptions are not necessary if the error appear upon the face of the report itself.

Besides, in an appeal from a sentence of a court of admiralty, the question of fact is opened as well as the question of law.

MARSHALL, Ch. J. Nothing is before this court but what is subsequent to the mandate.

*Martin.* The auditors have allowed nothing for the expenses of the cargo at *St. Jago de Cuba;* Himely was as much entitled to those expenses under the decree of this court, as to those incurred in this country.

*C. Lee,* contra.

There were no exceptions to the report in the court below. It was there regularly confirmed by that court, whose decree ought to be affirmed in this, unless the directions of the mandate have been counteracted in one or both the particulars of which the appellant complains.

The mandate left the claim of insurance open to be adjusted in the circuit court, and unless insurance was proved to have been actually made, nothing should be allowed on that account.

It is now to be presumed and taken as an admitted fact, that no insurance was made by the appellant.

The interest was properly allowed, unless good reason can be shown in equity why it should not be paid. According to modern usage in commercial controversies, interest is deemed an inseparable incident to the principal debt, the payment whereof is wrongfully delayed. This being the general rule, and the mandate being silent, the allowance of interest is unobjectionable. As the claimant was to have the benefit of equitable deductions, he ought to be subjected to equitable charges. He has had the use of the money, and the other party has lost the interest of it.

The freight and other charges, as well as the value of the cargo, having been amicably arranged by the parties, and there being no appeal as to them, they are not now to be the subject of inquiry or decision.

Upon the question of interest, Mr. Lee cited 3 *Dal.* 332. *Hills* v. *Ross,* and 4 *Dal.* 289. *Crawford* v. *Willing and Morris.*

*March* 10.

MARSHALL, Ch. J. delivered the opinion of the court as follows :

A decree having been tormerly rendered in this cause, the court is now to determine whether that decree has been executed according to its true intent and meaning.

That decree directed " the cargo of the Sarah to be restored to the original owners, subject to those charges of freight, insurance and other expenses which would have been incurred by them, in bring-ing the cargo into the United States."

In carrying this decree into execution, an allow-ance has been made for freight, and for expenses in-curred at the port of importation; but no allowance has been made for expenses at the port of lading, nor for insurance. The appellants, too, were charged with interest on the money into which the cargo had been converted.

No exception having been taken to this report, it is now liable to those exceptions only which appear on its face.

So far as respects freight, and the expenses at the port of entry and delivery, the report must be considered as correct; but in those items of the claim which were disallowed, the error, if it be one, is ap-parent on the face of the proceedings, and may therefore be corrected.

The court has not considered the appellants as infected by the marine trespass committed by the captors of the Sarah and her cargo. Their opera-tious commence with their purchase at St. Jago de Cuba; and the decree designed, and is thought to have been so expressed as to charge the owners with all the expenses which they would have incurred, had they made the purchase themselves. Had they

done so, they must have incurred some expenses at the port of lading. Among these is certainly not to be estimated the price of the cargo; but any expense necessarily attendant upon the transaction, such as putting the cargo on board, may properly, under this decree, be charged to the owners.

It is obvious, too, that the owners, or the underwriters, if they represent the owners, had they been the purchasers, must have insured the vessel and cargo from St. Jago de Cuba to the United States, or must themselves have stood insurers; in which latter case, the risk is deemed equal to the insurance. The decree, therefore, formerly rendered by this court, is understood to have entitled the appellants o insurance.

The question of interest is more doubtful; but this court is of opinion that the appellants ought not to be charged with interest.

Restitution of the cargo was awarded. The property having been sold, the money proceeding from the sales is substituted for the specific articles. If this money remains in possession of the court, it carries no interest; if it be in the hands of an individual, it may bear interest, or otherwise, as the court shall direct. But it is not supposed that the party, to whom restitution is awarded, receives interest in such case, unless it be decreed by the court. This court did not decree interest; nor would interest have been decreed, in this case, had the particular fact of the sale been brought before them.

The circumstances of the case were such as to restrain the court from inserting in its decree any thing which might increase its severity. The loss was heavy; and it fell unavoidably on one of two innocent parties. The court was not inclined to add to its weight, by giving interest in the nature of damages. The allowance of interest, therefore, in the court below is overruled.

The sentence of the circuit court is reversed.

JOHNSON, J. When the mandate of this court was received in the court below, auditors were nominated, by consent, to report what would be the usual mercantile allowance between the parties; and to state an account accordingly. Those auditors reported against the allowance of insurance, and in favour of interest. The supposition that the expense of transportation was not allowed, I am convinced, must be incorrect; for insurance and interest were the subject of the only two exceptions taken to their report. Upon hearing argument on these two exceptions, the court affirmed their report upon both these points, and I have since heard no reason to alter the opinion which I entertained on the argument below.

It is contended that the mandate of this court was peremptory as to the allowance of insurance, and did not sanction the charge of interest. The words of the mandate so far as relates to these points are the following: " subject to those charges for freight, insurance, and other expenses, which would have been incurred by the owners in bringing the cargo into the United States; which *equitable deductions* the defendants are at liberty *to show to the circuit court*," &c. These words imperatively require two things; viz. that the deductions, to be allowed to Himely, should be equitable in their nature, and should be shown to the court. Upon what ground could an allowance for insurance have been deemed just or equitable? It could only have been upon Himely's having actually paid an insurance, which he was at liberty to show, or upon his having himself incurred that risk which would have been covered by insurance. The fact was admitted that he had not insured, and as to having incurred any risk himself, I cannot understand in what possible view he could have incurred a risk, when this court has decided that if the property had been lost, he would have lost nothing. It was not the property of Himely, it was the property of Rose; had it been sunk in the ocean, it would not have been the loss of Himely, it would have

been the loss of Rose; there can be no reason, then, why Rose, who ran all the risk, should be adjudged to pay an insurance to Himely, who incurred no risk: but such is the effect of deducting it from the sum to be paid to Rose. After deciding that the property was not changed, that it still continued in Rose, and was never vested in Himely, I feel confused by the inquiry on what possible ground the allowance for insurance can be sanctioned.

With regard to interest, the question is not so clear, but the difficulty does not arise upon the abstract equity of the charge. In equity, interest goes with the principal, as the fruit with the tree. Rose is now to be considered as the rightful owner of the property, and ought to have had the possession and use of it, during the existence of this contest. But Himely, having given stipulation bonds, was, by the order of the district court, admitted to the possession and use of it, added it to his capital, traded upon it, and made such profits and advantages of it as his skill or ingenuity suggested. Rose, in the mean time, was kept out of the use of it, and lost those emoluments and mercantile advantages which might have resulted from the use of it. It was not a case in which the property is locked up in a warehouse, or the proceeds thereof deposited in the hands of the register of this court, but a case in which the goods were, in fact, converted into money by the effect of the stipulation bond, and the use of it given to Himely, to the prejudice of Rose: there could, therefore, be no radical objection to the charge, on the ground of equity. Had the mandate issued to restore to the party a flock of sheep, or stock, or bonds bearing interest, it is presumed that it would have been construed to authorize the delivery of their natural or artificial increase without any express words to carry them. But it is said that the mandate does not expressly authorize this allowance. This is true; but it must be recollected that the mandate of this court enjoins the allowance of *equitable deductions.* Now a variety of deduc-

tions may be, in the abstract, equitable, but may lose that character by its being made to appear that ample compensation has been already made for them. It was in this light that the court below sustained the charge of interest : because having had the usufruct of the property concerning which those charges on his part, which merited the denomination of *equitable deductions*, were incurred, it appeared to the court in fact that he had been compensated in part for those advances by the use of the money. If this court had not made use of the terms *equitable deductions*, that court probably would not have thought itself sanctioned in doing what appeared so equitable between the parties.

### March 15.

*Martin* and *Jones*, for the appellant, moved to open the principal decree; and stated that they were prepared to show that this court had been misinformed as to the law of St. Domingo. That they had further arrêtes, or ordinances, of the French government explanatory of that upon which the sentence was founded ; and showing that the seizure of the property was the exercise of a belligerent, not of a municipal right.

They contended that while the property remained out of the jurisdiction of the United States, it was lost to the libellants, and that Himely was entitled to a compensation for bringing it within their reach. That he ought to be reimbursed at least what he paid for the property.

*C. Lee*, contra.

The appeal as to the execution of the mandate gives no right to open the original decree.

No further order was taken in consequence of the motion.